R. L. ANDERSON, *Appellant*, v. THE CITY OF OCALA, A MU-
CIPAL CORPORATION, *Appellee*.

Opinion Filed March 12, 1914.

1. The lawmaking power of the legislature of a State is subject
only to the limitations provided in the State and Federal Con-
stitutions; and no duly enacted statute should be judicially
declared to be inoperative on the ground that it violates
organic law, unless it clearly appears beyond all reasonable
doubt that under any rational view that may be taken of the
statute it is in positive conflict with some identified or desig-
nated provision of constitutional law.

2. There is no express provision in the constitution of the State
of Florida as to special assessments by a municipality for
local improvements. Section 4 of Chapter 4089 of the Laws
of Florida, Acts of 1891, page 134, known as the Charter Act
of the City of Ocala, which reads as follows, does not violate
organic law or deprive any citizen or property-owner of any
constitutional right:

"The said City Council shall have power by ordinance to
regulate, provide for and compel the construction and repair
of sidewalks and pavements; and if the owner or owners of
any lot or lots shall fail to comply with the provisions of
such ordinance within such time as may be prescribed there-
for, ·the City Council may contract for the construction and
repair of such sidewalks or pavement, and the amount con-
tracted to be paid for the same by the city shall be a lien
upon such lot or 'lots along which said sidewalk or pavement
is constructed or repaired, and such amount may be assessed
as a special tax against the lot or lots adjoining·which such
sidewalk or pavement shall be constructed or repaired, and
the same may be enforced by suit at law or in equity, or the
said amount may be recovered against the said owner or
owners by a suit before any court of competent jurisdiction."

3. In a·suit in equity by a municipality against an owner of real
estate for the enforcement of a lien for the building of a

sidewalk by such municipality along the lines of such real estate, where the allegations in the bill show that such owner had direct notice of the special assessment against his property for the building of a sidewalk, whereby such owner was afforded ample opportunity to go before the city council with a petition or complaint, if he so desired, or to resort to a court of equity for a restraining order, but did neither, and where it is alleged in such bill "that the construction of the sidewalk aforesaid was done with the knowledge and acquiescence of the defendant and without objection by the defendant or anyone in his behalf," which allegations the defendant admits to be true by interposing a demurrer to the bill, such defendant is not in a position to take advantage of any omissions or irregularities in the ordinance providing for the construction of sidewalks, but will be held to be estopped by his conduct from so doing, where no constitutional right has been violated.

4. Under the provisions of Section 8 of Article VIII of the Constitution of Florida, "The legislature shall have power to establish and to abolish municipalities, to provide for their government, to prescribe their jurisdiction and powers, and to alter or amend the same at any time," the legislature may by statute confer upon a municipality the authority by ordinance to regulate, provide for and compel the construction and repair of sidewalks and to levy a special assessment upon lots along which such sidewalks are constructed, leaving the municipality free to pursue such course as it might think best in making such special assessment, so long as no principle of organic law is violated. Under such authority a municipality may in providing for such special assessment adopt what has become known as the "front foot rule."

5. An appellate court cannot take judicial notice of the location of the different streets and avenues in a city or town.

6. Where there is a substantial compliance with lawful requirements in the construction of sidewalks and street improvements by a municipality and it is not made to appear that the improvements as made are unsuited to the purposes de-

signed, or that such improvements are of no practical value, a lien under the statute on the adjacent property for such improvements may be enforced for the real value thereof under a lawful contract.

7. Where neither the charter act nor the ordinance provide for a special assessment for the construction of sidewalks against each lot separately, such special assessment may be levied in gross upon several lots of the same owner.

Appealed from Circuit Court for Marion County; W. S. Bullock, Judge.

Order affirmed.

R. L. Anderson, for Appellant;

Spencer & Hocker, for Appellee.

SHACKLEFORD, C. J.—The City of Ocala, a municipal corporation, filed its bill in chancery against R. L. Anderson for the enforcement of a lien upon Lots 2 and 3 of Block 59 of the Old Survey of the City of Ocala, of which the defendant is alleged to be the owner, for the sum of $199.20, with interest, for the construction of sidewalks and curbing along and abutting such property, the cost thereof which had been incurred by the complainant. To this bill the defendant interposed a demurrer, which was overruled and from which interlocutory order the defendant has entered his appeal. We do not copy the bill and exhibit, the demurrer or the order of the court thereon, but shall refer to such portions thereof as may be necessary to render this opinion intelligible. The defendant has assigned eleven errors, but we shall not treat them in detail. As the defendant who is the appellant here, says in his brief: "It is contended

that the Charter act itself is invalid; that the ordinance under which these proceedings have been taken is likewise invalid; and that finally, assuming or conceding that the Charter act and the ordinance are valid, then the city has failed to comply with material requirements of its own ordinance, and therefore is not entitled to enforce the lien claimed." We shall treat these contentions in the order in which they are above set forth.

The Charter Act, the validity of which is attacked, is Chapter 4089 of the Laws of Florida, Acts of 1891, page 134, being entitled "An Act to Extend and Enlarge the Boundaries and Powers of the Municipality Known as Ocala, Marion County, Florida." The assault is directed aainst Section 4, which reads as follows:

"The said City Council shall have power by ordinance to regulate, provide for and compel the construction and repair of sidewalks and pavements; and if the owner or owners of any lot or lots shall fail to comply with the provisions of such ordinance within such time as may be prescribed therefor, the City Council may contract for the construction and repair of such sidewalks or pavement, and the amount contracted to be paid for the same by the city shall be a lien upon such lot or lots along which said sidewalk or pavement is constructed or repaired, and such amount may be assessed as a special tax against the lot or lots adjoining which such sidewalk or pavement shall be constructed or repaired, and the same may be enforced by suit at law or in equity, or the said amount may be recovered against the said owner or owners by a suit before any court of competent jurisdiction."

It is insisted that this quoted section of the Charter act is violative of Section 12 of the Declaration of Rights of our State Constitution, which provides, among other things, that "no person shall be deprived of life, liberty

or property without due process of law; nor shall private property be taken without just compensation." In support of this contension, it is urged that the quoted section is invalid, "because, first, it provides for fixed charges or taxes against property without any reference whatever to any benefit which may accrue by reason of the tax; and because also no provision whatever is made in the act for giving notice to the property owner to enable him to have a hearing as to the assessment, or the benefit thereof, prior to the lien being fixed upon his property." The appellant cites Norwood v. Baker, 172 U. S. 269, 19 Sup Ct. Rep. 187, 28 Cyc. 1104 and notes and other authorities to the effect that "an assessment without benefit to the property or in excess of any benefit, is the taking of private property without just compensation." Even if we concede the correctness of this principle as an abstract or general proposition, we fail to see wherein it sustains or helps the contention of the appellant. The doctrine enunciated in Norwood v. Baker, *supra*, has been the subject of much discussion and criticism, but there is no occasion for us to go into the matter at any length. Suffice it to say that the principle laid down in the cited case has been much modified or qualified in subsequent decisions rendered by the same court. See French v. Barber Asphalt Paving Co., 181 U. S. 325, 21 Sup. Ct. Rep. 625; Wright v. Davidson, 181 U. S. 371, 21 Sup. Ct. Rep. 616; Tonawanda v. Lyon 181 U. S. 389, 21 Sup. Ct. Rep. 609; Webster v. City of Fargo, 181 U. S. 394, 21 Sup. Ct. Rep. 623, 645; Cass Farm Co. v. City of Detroit, 181 U. S. 396, 21 Sup. Ct. Rep. 644, 645; Detroit v. Parker, 181 U. S. 399, 21 Sup. Ct. Rep. 624, 645; Shumate v. Heman, 181 U. S. 402, 21 Sup. Ct. Rep. 645. We would also refer to Sheley v. City of Detroit, 75 Mich. 431, 8 N. W. Rep. 52; Cass Farm Co. v. City of Detroit, 124 Michigan. 433, 83 N.

W. Rep. 108; Braber Asphalt Paving Company v. French, 158 Mo. 534, 58 S. W. Rep. 934; Job. v. City of Alton 189 Ill. 256, 59 N. E. Rep. 622; City Council of Montgomery v. Moore 140 Ala. 638, 37 South. Rep. 291. An exhaustive discussion of the entire subject will be found in Chapter XXVIII of Vo. 4 of Dillon's Municipal Corporations (5th Ed.) entitled "Special Assessments." The great weight of authority fully sustains the principle as thus laid down by Judge Dillon in Section 1431 of his work just cited: "The courts are very generally agreed that the authority to require the property specially bene- fited to bear the expense of local improvements is a branch of the taxing power, or included within it, and the many cases which have been decided fully establish the general proposition that a statute authorizing the municipal authorities to open or establish streets, or to make local improvements of the character above mentioned and to assess the expense upon the property which, in the opinion of the designated tribunal or officers, shall be specially benefited by such street or improvement in proportion to the amount of such benefit or upon the abutters in propor- tion to benefits or frontage or superficial contents, is, in the absence of some special constitutional restriction, a valid exercise of the power of taxation. Whether the ex- pense of making such improvements shall be paid out of the general treasury, or be assessed upon the abutting property or other property specially benefited, and, if in the latter mode, whether the assessment shall be upon all property found to be benefited, or alone upon the abut- ters, according to frontage or according to the area of their lots, is, according to the present weight of authority, considered to be a question of legislative expediency, unless there is some special restraining constitutional provision upon the subject. Whatever limitation there is

upon the legislative power of taxation (which includes
the power of apportioning taxation) must be found in
the nature of the power, and in the express constitutional
provisions." See also the discussion in Cooley's Constitu-
tional Limitations (7th ed.) pages 729 to 738 and notes;
28 Cyc. 1103 *et seq.;* Dillon's Municipal Corporations,
(5th ed.) Vol. 4, Section 1436, wherein the effect of the
decisions in Norwood v. Baker, *supra,* and subsequent
cases is discussed at length, and the following conclusion
reached and announced: "As a *result of the decisions of
the United States Supreme Court,* it may be regarded as
definitely settled that the legislature of a State may cre-
ate, or authorize the creation of, special taxing districts
and charge the cost of a local improvement, in whole or
in part, upon the property in such districts or according
to valuation or superficial area, or frontage, without vio-
lating the Fourtenth Amendment to the Federal Consti-
tution; and that the whole expense of paving or improv-
ing a street or highway may be assessed by a municipality
pursuant to statutory authority upon the lands abutting
upon the street or highway so improved in proportion to
the feet frontage of such lands without providing for a
judicial inquiry into the value of such lands and the bene-
fits actually to accrue to them by the proposed improve-
ment."

We think that this statement of the law is correct, and
it would seem to be decisive as to the validity of the
authority conferred by Section 4 of the Charter act of the
City of Ocala, quoted above, concerning the construction
of sidewalks and the assessment of a special tax for the
cost thereof against the lot or lots adjoining which such
sidewalk shall be constructed. As to the further conten-
tion of the appellant that such quoted section 4 is invalid
because it fails to provide for the giving of any notice to

Anderson v. City of Ocala—Opinion of Court.

the property owner to enable him to have a hearing as to the assessment, or the benefit thereof, prior to the lien being upon his property, we believe that the following statement of the law, as laid down by Page and Jones in Section 132 of Vol. 1 of their work on Taxation by Assessment to be correct and abundantly supported by the authorities cited in the notes, as well as others: "Whether a notice is necessary prior to proceedings to enforce the assessment in quesetion is a matter which depends upon the nature of the proceeding by which such assessment is enforced. If the assessment is to be enforced summarily without notice or judicial proceedings, it is evident that no opportunity is thereby given to the property owner to contest the assessment upon its merits. The assessment has, in such case, already become a finality. Accordingly, if notice has not been given at a prior stage of the proceedings so that the property owner has an opportunity to contest the assessment upon its merits, the proceeding is in violation of the constitutional provision which forbids the taking of property without due process of law. On the other hand, if the proceeding to enforce the assessment is in the nature of a judicial proceding in which notice is given to the property owner and a full opportunity is given to him to be heard upon the merits, such proceeding constitutes due process of law and no prior notice seems to be necessary."

It will be observed that such section 4 expressly provides for the enforcement of the special tax therein provided for by an action at law or suit in equity, in which the owner would necessarily have an opportunity of being heard and of making any defense which he might have. See Garvin v. Daussman, 114 Ind. 429, 16 N. E. Rep. 826; Law v. Johnston, 118 Ind. 261, 20 N. E. Rep. 745; Davidson v. New Orleans, 96 U. S. 97; Hagar v. Reclamation

Dist. No. 108, 111 U. S. 701, 4 Sup. Ct. Rep. 663; 2 Page and Jones, Taxation by Assessment, Sections 773 and 1141; Ballard v. Hunter, 204 U. S. 241, 27 Sup. Ct. Rep. 261. It should also be borne in mind that we expressly held in Edwards v. City of Ocala, 58 Fla. 217, 50 South. Rep. 421, "There is no express provision in the constitution as to special assessments for local improvements." In the City of Jacksonville v. Bowden, decided here at the present term, we said: "The lawmaking power of the legislature of a State is subject only to the limitations provided in the State and Federal Constitutions; and no duly enacted statute should be judicially declared to be inoperative on the ground that it violates organic law, unless it clearly appears beyond all reasonable doubt that under any rational view that may be taken of the statute it is in positive conflict with some identified or designated provision of constitutional law." In so holding we were but followng prior decisions of this court. In the light of the cited authorities, we are clear that the contention of the appellant, as to the invalidity or unconstitutionality of Section 4 of Chapter 4089 of the Laws of Florida, Acts of 1891, has not been sustained.

Now we turn to the consideration of the second contention of the appellant, that the ordinance of the city, based upon such statute, under which the proceedings in question were taken, is invalid. Such ordinance is somewhat lengthy, and we see no occasion for copying it in full. Section 1 provides that the owners of lots fronting or abutting upon certain named streets and avenues are directed and required to construct sidewalks along the property lines of certain designated widths for certain streets and of cement composition under the specifications therein set forth. Section 2 provides that the sidewalks upon the streets and avenues named in Section 1 shall be

in process of construction within 90 days after the passage and approval of the ordinance. Section 3 provides for the construction of certain described curbing along the streets and avenues. Sections 4, 5 and 6 are as follows:

"Sec. 4. If the owner or owners of any lot, piece or parcel of land fronting or abutting upon said streets or avenues, or the portions thereof described in section one, shall not comply therewith, or with the provisions of this ordinance, within the time prescribed thereby, that then the City Council be and it is hereby authorized and directed to advertise according to law for bids covering the construction of said sidewalks and curbs, as provided for in Section One, said bids to be sealed and filed with the Clerk of the City of Ocala, five days before the meeting of the Council, at which all the bids for such paving are to be considered, and in accordance with specifications for such sidewalk and curb construction as shall be on file in the office of the City Clerk during the periods of such advertisement.

Section 5. That the cost of construction of such sidewalks and curbs, together with the costs arising under this ordinance shall be chargeable to the owner or owners, and assessable against the lot or lots, pieces or parcels of land fronting and abutting upon said streets and avenues and the portions thereof as described in Section One, as such assessment shall constitute a lien superior in dignity to all other liens upon each of the lots, pieces or parcels of land fronting or abutting upon said streets and avenues, and portions thereof, pro rata, according to the number of lineal feet of said lot, piece or parcel of said land thereof, fronting or abutting upon each side of said streets and avenues or portions thereof as described in Section One.

Sec. 6. That the City Council of the City of Ocala be and it is hereby authorized to fix the proportional amount of the assessment for the costs of construction of paving said sidewalks and curbing assessable against each lot, piece or parcel thereof, fronting or abutting upon said streets or avenues, and portions thereof, as described in Section One."

Section 7 provides that the special assessment for the construction of sidewalks and curbs shall become due and payable as fast as the same are constructed, "to be paid by the property owners of the property fronting or abutting upon the said sidewalks and curbs so constructed," and contains a further provision to the effect that nothing in such section shall be construed to be in conflict with Section 1035 of the General Statutes of Florida.

Section 8 provides for the issuing of special assessment City Certificates for such work "which shall constitute a lien superior in dignity to all other liens upon such lots, pieces or parcels thereof, fronting upon said streets or avenues, or portions thereof, as described in Section One, which certificates shall draw interest at the rate of eight per cent. per annum from date until paid," and gives the requirements of such certificates, prescribes the form thereof, and provides "that such lien against such lot, piece or parcel of land shall immediately vest in the City of Ocala, and may be enforced in a like manner as mechanic's or material man's liens."

Sections 9 and 10 are as follows:

"Sec. 9. That is shall be the duty of the City Clerk, within ten days after the approval of this ordinance by the Mayor of the City of Ocala, to issue a notice to each and every owner or owners of lot, lots, pieces or parcels thereof, fronting and abutting upon the streets and avenues and portions thereof described in Section One, advis

ing them of the fact that the City Council has ordered the said owner or owners to construct sidewalks and curbing, fronting and abutting their property, and requiring them to construct or commence the construction thereof within ninety days of the giving of such notice, which said notice shall be served by the Marshal of the City of Ocala upon the said owner or owners, or persons in possession of said property, if said property be occupied. In the event the owner or owners of any lot or lots, pieces or parcels thereof fronting or abutting upon the streets and avenues or portions thereof described in Section One, be unknown to the Marshal or City Clerk, in that event the City Clerk shall issue a notice which shall be published once a week for four consecutive weeks in some newspaper published in the City of Ocala, which said notice shall be deemed served upon said owner or owners.

The notice provided for in this section shall be substantially in the following form, to-wit:

To ..................................................................................

You as the owner of the following described lot fronting and abutting on ........................................ street (or avenue) in the City of Ocala, ............................................ are advised that the City Council of Ocala, has ordered that you construct sidewalks and curb, in front of and abutting your property on said street, and you are hereby required to construct or commence the construction thereof within ninety days. Said sidewalks and curbing are to be constructed in accordance with certain specifications which are on file in the City Clerk's office, and subject to your inspection.

................................................................, City Clerk.

Upon which the Marshal shall make a return substantially in the following words, to-wit: Received this notice this ................ day of ...................................., 19........, and served the

the same by delivering a copy thereof to ............................................
at Ocala, Florida, on this the ................ day of ...............................,
A D. 19.............

........................................................., City Marshal.

Sec. 10. That upon the issuance of certificate or cer-
tificates provided for in Section (8) eight of this ordi-
nance the City Clerk shall give a notice in writing within
ten days after the issuance of said certificate, to the
owner or owners of lot or lots, pieces or parcels thereof,
fronting or abutting upon said streets, or avenues or por-
tions thereof as described in Section One, of the issuance
of such special assessment city certificate against his,
her or their lot, lots, pieces or parcels thereof, and shall
keep a record of such certificate in a book to be kept for
that purpose."

Section 11 repeals all ordinances or parts of ordinances
in conflict with the provisions of Section One of such
ordinance and further provides for the posting of the
same "in usual manner as Charter and ordinances re-
quired." Section 12 provides that the ordinance shall
take effect immediately upon its approval by the Mayor.

In many respects the ordinance is assailed as being
invalid upon the same grounds which are directed against
Section 4 of the Charter act. We shall not repeat what
we have previously said, conceiving that we have suffi-
ciently disposed of these grounds. This particularly ap-
plies to the further contention that the ordinance contains
no provision "for giving the property owner any notice
or opportunity to be heard upon any matter affecting the
construction of sidewalks, nor does the ordinance have
any regard to the extent of any benefits to the property
by reason of construction of such walks." We would call
attention to the fact that the bill of complaint alleges that
the "ordinance was duly published as required by law;"

also "that the City Clerk of the City of Ocala, within ten days after the passage of the ordinance referred to in paragraph one of this bill of complaint, issued a notice in writing to the defendant advising him of the fact that the City Council of the City of Ocala, had ordered him, as owner, to construct sidewalks and curbing along the lines of lots two and three of Block Fifty-nine, Old Survey, Ocala, fronting or abutting Magnolia Street and to construct or commence the construction of said sidewalks and curbing within ninety days of the giving of said notice, which said notice was duly and legally served on the defendant by the Marshal of the City of Ocala." This was in accordance with the provisions of Section 9 of the ordinance, which we have copied above. The bill of complaint also contains the following allegations:

"Fourth. That the defendant failed and refused to construct said sidewalks and curbing along the lines of the above described property fronting or abutting said Magnolia Street within the time required by said ordinance; that the defendant having failed and refused to construct the said sidewalks and curb within the required time and for a long time thereafter, fronting and abutting the said described property of defendant, the complainant, did, according to law advertise for bids covering the construction of said sidewalks and curb and afterwards did accept the best bid for such construction.

Fifth. That the complainant did construct or cause to be constructed the said sidewalks and curbs along the lines of the above described property of the defendant fronting and abutting a part of that portion of Magnolia Street in and by said ordinance required to be constructed for and at a total cost of one hundred and ninety-nine dollars and twenty cents, which sad amount this complaiant paid out and expended in behalf of such con-

struction as aforesaid; and the said City Council of the City of Ocala did fix the proportional amount of the assessment for the cost of the construction of paving said sidewalks assessable against the above described property fronting and abutting Magnolia Street, said paving being completed on the 30th day of January, A. D. 1911, as follows: One hundred and sixty-six square yards at one and 20/100 dollars per square yard aggregating the sum of one hundred ninety-nine and 20/100 ($199.20) dollars.

Sixth. That the construction of the sidewalks aforesaid, was completed on the 20th day of January, A. D. 1911, and a Special assessment certificate numbered '9' was issued on the 7th day of March, A. D. 1911, against the above described property of the defendant for the said sum of one hundred ninety-nine and 20/100 with interest from date, which certificate is hereto attached and marked 'Exhibit A;' and that notice of the issuance of the said special assessment certificate was in writing duly and legally served on the defendant.

Seventh. That by reason of the construction of the sidewalk or sidewalks as aforesaid, the aforesaid described property of the defendant has been specially benefited; that said special assessment certificate was issued only for the purpose of paying for the construction of the sidewalks aforesaid; that the construction of the sidewalk aforesaid was done with the knowledge and acquiescense of the defendant and without objection by the defendant or any one in his behalf.

Eighth. That the complainant has done all material and necessary things to be done and performed in the premises and has and is entitled to a lien against the aforesaid described property for the amount above specified for the construction of the aforesaid sidewalks, which said amount the defendant refuses to pay to the complainant."

It would seem from these allegations, which are admitted to be true by the demurrer interposed thereto, that the appellant did have direct notice of such special assessment against his property and was afforded ample opportunity to have gone before the City Council concerning the matter with a petition or complaint, if he so desired, or to have resorted to a court of equity and sought a restraining order, but, so far as we are advised, he did neither. On the contrary, the bill alleges "that the construction of the sidewalk aforesaid was done with the knowledge and acquiescence of the defendant and without objection by the defendant or any one in his behalf." As we said in Hampton v. City of Gainesville, 64 Fla. 303, text 305, 60 South. Rep. 185, "Even if the failure to state in the ordinance the estimated cost of the curb and gutters as required by the City Charter, may have been a ground for arresting the work when undertaken by the city, it is clearly inequitable to permit such omission to relieve the property owner who failed to construct curbs and gutters as required by the ordinance and took no steps to test the validity of the ordinance, but permitted the city to do so without an effort to prevent it." Under this holding, we are of the opinion that the appellant is not in a position to take advantage of any omissions or irregularities in the ordinance, unless some constitutional right of the appellant has been thereby violated. See 28 Cyc. 1173 and authorities cited in the notes. Of course, we do not mean to hold or imply that the appellant is estopped by his conduct from attacking the validity or constitutionality of the Charter act or ordinance. He is afforded that opportunity in this suit. Under the authorities previously cited, that would seem to be the only notice to which he is entitled as a matter of strict legal right. See 1 Page and Jones, Taxation by Assessment, Section

132, and authorities cited in the notes, to which we have already referred.  If the appellant has estopped himself by his own conduct from raising some of the questions which might otherwise have been open to him, he has nobody to blame but himself.  He had the opportunity of raising and having such questions passed upon before the work was done by the city.

The appellant further contends that the Charter act did not provide any rule or mode whatever for the making of the special assessment for sidewalks by the city, but left the matter entirely to the discretion of the City Council and that even if the legislature had the power to adopt what is known as the "front foot rule," which was discussed in Norwood v. Baker, *supra,* and other cases which we have cited, it had not done so and also that it had not delegated any such power to the city and as a matter of law could not do so.  As we have already seen, the "front foot rule" is not violative of any constitutional provision and the legislature could have adopted it, had it seen fit so to do.  It could have authorized and empowered the City of Ocala to so make the special assessment.  As a matter of fact, the legislature did not undertake to direct the City of Ocala what mode or rule it should adopt in making such assessment, but left such municipality free to pursue such course as it might think best, so long as no principle of organic law was violated.  This being true, we know of no reason why the City of Ocala was prevented or forbidden from adopting such "front foot rule."  See 4 Dillon's Municipal Corporations (5th ed.), Section 1376, and the authorities cited in the notes.  See the reasoning in Merrell v. City of St. Petersburg, 64 Fla. 367, 60 South. Rep. 349; Munn v. Finger, 66 Fla. 572, 64 South. Rep. 271; City of Jacksonville v. Bowden, decided here at the present term.  In these cases, especially in City of Jack-

sonville v. Bowden, we have discussed at length the powers or authority which the legislature may confer upon municipalities under the provisions of Section 8 of Article VIII of our State Constitution, which reads as follows: "The legislature shall have power to establish and to abolish municipalities, to provide for their government, to prescribe the jurisdiction and powers, and to alter or amend the same at any time. When any municipality shall be abolished, provision shall be made for the protection of its creditors."

As we have already held, Section 4 of the Charter act is not violative of any provision of organic law, and under the reasoning in the cases just cited, we are of the opinion that the ordinance in question is not violative of the constitution, of the Charter act or of any other statute in its provisions for a special assessment for sidewalks and curbs. We would refer to White v. The People, 94 Ill., 604; Craw v. Village of Tolono, 96 Ill. 255, 36 Amer. Rep. 143; Job v. City of Alton, 189 Ill. 256, 59 N. E. Rep. 622. We fully approve of the following expression by Mr. Chief Justice DICKEY in Craw v. Village of Tolono, *supra*: "Serious apprehensions are expressed lest, under the power to impose special taxation upon contiguous property for local improvements, cities may, in case of very expensive improvements, abuse the power, and under the form of its exercise, practically confiscate private property to public use. So long as it is confined to sidewalks, there is little cause for such apprehension. It will be time enough to consider the question when a case of oppression occurs." We must not lose sight of the fact that the instant case is before us upon a demurrer to the bill. If it be true that "a case of oppression" has occurred in the making of the special assessment against the property of the appellant, that is defensive matter which must be set up by plea or

answer. We have not lost sight of our holding in City of Gainesville v. McCreary, 66 Fla. 507, 63 South. Rep. 914, that "Authority given municipalities to impose taxes and special assessments for municipal improvements should be strictly construed, especially when it adversely affects the rights of property holders to be fully advised of the burdens to be put upon them; and any material departure from the express authority is fatal to the special assessment." We fully approve of this announced principle, but do not find that there has been any material departure in the instant case from the express authority conferred.

The appellant further contends that the ordinance is invalid because "it provides for building sidewalks on streets widely separated, and in different parts of Ocala, one improvement having absolutely no connection with one another, and there being no possible benefit to a lot in one part of the city by reason of the construction of a sidewalk in another and distinct part thereof." What we have already said practically disposes of this contention adversely to the appellant. It may be that this point is not properly before us, since we cannot take judicial notice of the location of the different streets of the City of Ocala. We content ourselves with referring to 28 Cyc. 973, and the authorities cited in the notes. As to the additional contention of the appellant that the bill fails to allege that the amount with which it is sought to charge the property of the appellant as a special assessment "is a fair and reasonable price for the work," in view of what we have already said, it does not merit further treatment.

We have now reached the last contention of the appellant, which is that the City of Ocala has failed to comply with the requirements of its own ordinance and for that reason the lien claimed cannot be enforced. We have

examined the particular respects pointed out by the appellant in which it is claimed that the city failed to comply with the ordinance and are of the opinion that the appellant has likewise failed to sustain this contention. As we held in Morris v. City of Gainesville, 60 Fla. 338, 53 South. Rep. 739, "Where there is a substantial compliance with lawful requirements in the construction of sidewalks and street improvements by a municipality and it is not made to appear that the improvements as made are unsuited to the purposes designed, or that such improvements are of no practical value, a lien under the statute on the adjacent property for such improvements may be enforced for the real value thereof under a lawful contract." See also Theisen v. Whiddon, 60 Fla. 372, 53 South. Rep. 642. As to the point that the special assessment was made against the two lots of the appellant jointly, instead of each lot separately and for that reason such assessment is invalid, we would say that neither the Charter act nor the ordinance require a separate assessment against each lot. In the absence of such requirement, such special assessment may be levied in gross upon several lots of the same owner. See 28 Cyc. 1150, and authorities cited in the notes. The decisions of this court cited by the appellant are not applicable in the instant case.

While we have not specifically referred to them, we have given all the authorities cited to us by the respective parties our careful examination and have patiently considered the different points argued. It follows from what we have said that we think that the interlocutory order appealed from should be affirmed, and it is so ordered.

TAYLOR, COCKRELL AND WHITFIELD, J. J., concur.

HOCKER, J., takes no part.